IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**TRUSTEES OF THE PLUMBERS
& STEAMFITTERS UNION LOCAL 10
HEALTH AND WELFARE FUND, et al.,**

      **Plaintiff**

v.                   Civil Action No. 3:05CV571

**COOK MECHANICAL, LLC., et al.**

      **Defendant.**

## MEMORANDUM OPINION

This matter is before the court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendant Cook Mechanical, LLC's (Cook Mechanical)[1] motion to dismiss, or in the alternative, to stay further proceedings. More specifically, Cook Mechanical moves to dismiss the Complaint for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)), or, in the alternative, Cook Mechanical urges the court to stay the action pending the outcome of what it asserts to be compulsory arbitration of the matter. Jurisdiction is premised on the court's federal question jurisdiction and its supplemental jurisdiction over pendent state claims. 29 U.S.C. §§1132, 1145; 28 U.S.C. §1367. Having considered the pleadings, the court finds that the

---

[1] Tracy Cook was originally named as an additional defendant. However, Plaintiffs have notified the court (docket entry no. 9) that Ms. Cook has filed for Chapter 13 Bankruptcy and request that the court continue the proceedings solely against Defendant Cook Mechanical because of the automatic stay provisions of the Bankruptcy Code that precludes further action against Tracy Cook pending the resolution of the bankruptcy proceeding. It is not clear whether the Plaintiffs seek a voluntary dismissal of the Complaint against Ms. Cook, or a stay. The matter will be resolved at a scheduling hearing in the near future in any event.

motion to dismiss must be DENIED, and that the motion to stay will be GRANTED, but only as to Count VI of the Complaint.

## FACTS

Cook Mechanical is a Virginia corporation engaged in the plumbing, heating, and air conditioning industry. On March 24, 2005, Cook Mechanical entered into a contract[2] with Local Union No. 10 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (Local Union 10) to employ union members of Local Union 10, as it did beginning in April 2005. (Compl., ¶¶10, 12, at 3-4). The contract at issue (Contract) "covers the rates of pay, rules and working conditions of all mechanics and apprentices engaged in the installation of all the plumbing systems, heating, pipefitting, refrigeration, air conditioning and all other work pertaining to the Plumbing and Steamfitting Industry." (Mem. Supp. Mot. Stay or Dism. (Def.'s Mem.), ex. A, at 2). The court finds, without dispute by the parties, that the Contract must be considered a "collective bargaining" agreement within the meaning of the National Labor Relations Act and interpreted accordingly. 29 U.S.C. §158 (d).

The Contract set out the terms and conditions for contributions Cook Mechanical was obligated to make to several employee benefit funds. (Def.'s Mem. ex. A, Art. V, §§ 1, 7a. 8, 9, 10, 11, at 5-11). The Plaintiffs are Trustees of five different multi-employer benefit funds[3]

---

[2]The Contract at issue is between the Labor Negotiating Committee of the Virginia Association of Contractors and Local Union 10. Cook Mechanical signed as a contractor/employer. The Contract was effective from September 1, 2002, through August 31, 2005.

[3]The funds are the Plumbers & Steamfitters Union Local 10 Health and Welfare Fund; Trustees of the Plumbers & Steamfitters Union Local 10 Apprenticeship Fund; the Plumbers &

covered by the Contract. The Trustees allege that Cook Mechanical is in violation of §§ 502 and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§1132 and 1145, by having failed to remit required contributions to those funds during the months of April 2005 through June 2005. (Compl. ¶1, at 2). Further, Local Union 10, which joins the Trustees as a Plaintiff in the Complaint, asserts a separate claim of conversion against Cook Mechanical for its withholding of union dues and vacation fund contributions from employee paychecks. (Compl. ¶¶50-52, at 12-13). Local Union 10 asserts that it had an "immediate right to possession" of those funds. Id. Local Union 10 accordingly invokes the court's supplemental jurisdiction over what would otherwise be a state law conversion claim.[4]

## ANALYSIS

**1. The Motion to Dismiss**

Cook Mechanical argues that the Complaint relies on provisions of the Contract and that the claims at issue in this case are therefore governed by the dispute provisions within the Contract. (Def.'s Mem. ¶¶1-3, at 2). Stated simply, Cook Mechanical asserts a common law contract argument, namely, the parties should be governed by the law of the contract that they signed. *See, e.g.*, Bob Grissett Golf Shippes, Inc. v. Confidence Golf Co., 44 Bankr. 156 (Bankr. E.D. Va. 1984)(a contract which is clear and unambiguous in its terms, and on which the parties

---

Steamfitters Union Local 10 Individual Account Fund; the Plumbers & Pipefitters National Pension Fund; and the International Training Fund (the Trustees).

[4]28 U.S.C. § 1367 states that in any civil action in which the district courts have original jurisdiction, the courts shall have jurisdiction over all other claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Id. The court finds here that the conversion claim is closely related to the Contract in dispute and that it arises from the same factual allegations on which the Trustees' ERISA claims are based. The court will therefore exercise jurisdiction over the conversion claim.

have agreed, governs the relationship between the parties). Specifically, Cook Mechanical asserts that since Plaintiffs "are in violation and breach of their own Labor Agreement by failing to arbitrate, this matter should be dismissed pursuant to Rule 12(b)(1)...as this court lacks jurisdiction over the subject matter in these proceedings." (Def.'s Mem. ¶4, at 2). Such an argument is analogous to the maxim: "the party who commits the first breach of a contract is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform" 4A M.J., Contracts, § 77 (5th ed. 1999); Spotsylvania County Sch. Bd. v. Seaboard Sur. Co., 243 Va. 202, 209 (1992).[5]

While lawsuits based on contract are *generally* the provenance of state courts, federal courts have jurisdiction over ERISA actions. 29 U.S.C. §1132 (e). The collective bargaining agreement here, and the related dispute between the Plaintiffs and Cook Mechanical, is therefore within the purview of the federal statutory scheme. Stated another way, the Contract covers several employee benefit funds governed by ERISA. 29 U.S.C. §1002(1)(A), (2), (3). Under ERISA, an employer must make contributions to employee benefit plans according to the terms of the governing collective bargaining agreement. 29 U.S.C. §1145. A fiduciary of a benefit plan may bring a civil action to enforce the terms of the plan. 29 U.S.C. §1132 (3). Therefore, this court has jurisdiction over both the Trustees' ERISA claims and Local Union 10's conversion claim. 29 U.S.C. §1132 (e); 28 U.S.C. § 1367. The court accordingly DENIES Cook Mechanical's 12(b)(1) motion to dismiss for supposed lack of jurisdiction. The remaining issue, therefore, is whether the court should grant the Defendant's motion to stay the action "until

---

[5]Cook Mechanical may also be arguing that these are straightforward contract claims and are thus the purview of the state courts for which this court is without jurisdiction. However, such a position is not sufficiently asserted to require analysis.

Plaintiffs have complied with their obligations to arbitrate." (Def.'s Mem. ¶4, at 2).

**2. The Arbitration Issues and the Motion to Stay**

The arbitration provisions of the Contract are located in Article III. (Def.'s Mem., ex. A, at 4). Section (1) of Article III states: "It is mutually agreed that all disputes described below, which may arise between the parties hereto, or individual Employers or individual Journeymen, shall be submitted in writing to a Joint Conference Committee...majority decisions of the Committee shall be final and binding on all parties hereto..." Section (2) of the same provision states: "There shall be presented to the Joint Conference Committee for decision all alleged violations of this Agreement, disputes regarding the true intent and meaning of the Agreement..." (Id.) The final section of Article III specifically addresses arbitration:

> In the event the Joint Conference Committee is unable to reach a decision on any question submitted for consideration, each party shall designate two arbitrators...The decision of this Board shall be final and binding upon all parties hereto. It is further understood and agreed that no dispute shall result in any stoppage of work.

(Id. at §§ 3-4).

a. ERISA Claims - Counts I - V of the Complaint

Such language purports to apply to all disputes or violations of the Contract. Cook Mechanical argues that the dispute regarding required contributions to be made to benefit funds should be arbitrated in light of the strong federal policy favoring arbitration in addition to the dictates of the relevant contractual provisions. (Def.'s Mem. ¶4, at 2, citing Moses H. Cone Mem'l Hosp. v. Mecury Constr. Corp., 460 U.S. 1, 24 (1983)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." Moses, 460 U.S. at 24-25.

Moses addresses the Arbitration Act at length and the statute is applicable to the present dispute. Indeed, the Contract evidences "a transaction involving commerce," and Article III of the Contract must be considered as an agreement "to submit to arbitration an existing controversy arising out of such a contract..." 9 U.S.C. §2.[6]

While Cook Mechanical has not specifically invoked the Arbitration Act in support of its motion to stay, the statute provides a basis for the court to refer the matter to arbitration, if appropriate. The Arbitration Act creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses, 460 U.S. at 24. However, a court must be satisfied that:

> *the issue involved in [the pending suit] is referable to arbitration under [the] agreement*, [and, if so, the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3 (emphasis added). The court must therefore determine whether the instant dispute is referable to arbitration based on the terms of the Contract between Defendant Cook Mechanical and Local Union 10.

Cook Mechanical also cites United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574 (1960), in support of its argument that the matter should be referred to arbitration prior to further pursuit of litigation. In the case, the Supreme Court stated that collective bargaining agreements promote industrial stabilization and that "a major factor in

---

[6]While one must have an independent basis for federal jurisdiction to utilize the remedies of the Arbitration Act (Moses, 460 U.S., at 26 (citing Commercial Metals Co. v. Balfour, Guthrie & Co., 577 F.2d 264, 268-69 (5th Cir. 1978)), Section 1132 of ERISA provides the court with such a jurisdictional basis.

achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement." Id., at 578 (citing Textile Workers v. Lincoln Mills, 353 U.S. 448, 453-455 (1957)). "The parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement..." United Steelworkers, 363 U.S. at 582. In other words, the arbitration is a "'quid pro quo' for the agreement not to strike." Textile Workers, 353 U.S. at 455.

In response, the Plaintiff Trustees here argue that the arbitration provisions of the collective bargaining agreement do not apply to them:

> The Supreme Court has held that the presumption of arbitrability, which normally applies in disputes between employers and labor organizations, does not apply in disputes between employers and trustees of employee benefit funds, like the Local 10 Funds and National Funds. Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 370-373 (1984). In reaching this holding, the Court recognized that trustees of employee benefit plans are not parties to the collective bargaining agreements between employers and labor organizations; instead, they are third party beneficiaries. Schneider Moving, 466 U.S. at 370. Yet, as third party beneficiaries to a collective bargaining agreement, the trustees occupy a special position atypical of what is generally understood of third party beneficiaries to a contract. Id. at 371. In this special position, trustees of employee benefit plans generally are not subject to the defenses that would typically be asserted against a party who is suing on the contract. Id.; *See also* Lewis v. Benedict Coal Corp., 361 U.S. 459, 468-469 (1960). Accordingly, the Supreme Court has held that the defense of exhaustion of contractual remedies, such as the collective bargaining agreement's grievance and arbitration procedure, cannot be invoked against an action by trustees of an employee benefit plan, even when the dispute involves an interpretation of the collective bargaining agreement. Scheider Moving, 355 U.S. at 372. Therefore, contrary to the Defendants' claims, there is no presumption that the dispute between the Local 10 Funds and the National Funds, on the one hand, and Cook Mechanical, on the other, is arbitrable.

(Pl.'s Mem. in Opp. to Mot. to Dis. (Pl.'s Mem.), at 4-5).

The Trustees also assert that the language of the Contract itself does not provide for arbitration of the ERISA claims because the dispute did not "arise between the parties hereto." (Pl.'s Mem., at 5, quoting the Contract, ex. A, at 4). Indeed, the Trustees are not parties to the

Contract and they argue accordingly that nothing in the arbitration provisions of the Contract extends coverage to either non parties or even third party beneficiaries. (Pl.'s Mem., at 5, citing Schneider Moving, 466 U.S. at 372-373). Therefore, since nothing requires the Trustees to arbitrate the disputes regarding the fund contributions, the Trustees seek to proceed immediately with their ERISA claims (Counts I through V of the Complaint). (Pl.'s Mem., at 5).

The cases cited by Cook Mechanical in opposition involved disputes between *employers* and labor organizations and are otherwise distinguishable from the present litigation. *See* United Steelworkers, 363 U.S. at 575; Moses, 460 U.S. at 20-23. While the *contract* at issue in this case is between a labor organization (Union Local 10) and a contractor/employer (Cook Mechanical), the *dispute* here involves the Trustees of the benefit funds to which the employer was obligated to contribute and not between the parties to the Contract.

In Schneider Moving, trustees of two multi employer trust funds sought to enforce the contribution provisions of the funds against employers under a collective bargaining agreement. The employers argued, like Cook Mechanical here, that as third party beneficiaries, the trustees were bound to honor the arbitration provision in the collective bargaining agreement. They applied the "general rule that the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract." Schneider Moving, 466 U.S. at 370 (citing Restatement (Second) of Contracts § 309, Comment b (1981)). The Supreme Court rejected the employers' argument, holding "that rule...is merely [one] of construction useful in determining contractual intent. It should not be applied so inflexibly as to defeat the intention of the parties." Id. at 371.

The remaining issue in the case, therefore, was whether the parties to the collective

bargaining agreement intended the trustees to exhaust arbitration procedures prior to bringing a suit in contract. Id. The Court held that it did not:

> Arbitration promotes labor peace because it requires the parties to forgo the economic weapons of strikes and lockouts. Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all. We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreement.

Schneider Moving, 466 U.S. at 372 (citing NLRB v. Amax Coal Co., 453 U.S. 322, 337 (1981)).

In applying such a holding to this case, the court clearly cannot require that the Trustees and Cook Mechanical arbitrate their ERISA disputes. The Trustees here had no right under the Contract to demand arbitration from the Defendants, and so they cannot be compelled to abandon their claims in favor of arbitration. The arbitration provisions only apply to "the parties hereto," namely, either the employer (Cook Mechanical) or Local Union 10. (Def.'s Mem., ex. A, at 4). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so arbitrate." AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. at 582). "Arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." Id. (citing Gateway Coal Co. v. Mine Workers, 414 U.S. 368, 374 (1974)). In fact, the Contract specifically states that disputes about contributions to the National Pension Fund, which is at issue here, "shall *not* be subject to the grievance and arbitration procedure...under the collective bargaining agreement." (Def.'s Mem., ex. A at 10) (emphasis added).

Additionally, the arbitration provisions at issue make several references to the brief periods of time in which alleged violations of the Contract must be addressed or resolved. (Id. §§ 2 and 3, at 4). The last sentence of Article III states: "it is further understood and agreed that no dispute shall result in any stoppage of work." (Id. § 3). Such contractual language evidences the parties' intent in regard to the arbitration provisions of the Agreement and, as the Court held in Schneider, the parties' intentions are an important consideration. Schneider, 466 U.S. at 371-375. Here, the parties simply sought to resolve all disputes between employer and union employee quickly in accordance with the rules of the collective bargaining agreement (as opposed to state or federal law) in order to avoid "industrial waste." Based on the history of the purpose of arbitration provisions in collective bargaining agreements, the inapplicability of federal policy favoring arbitration to disputes such as this one between employers and trustees, and the intent of the parties as reflected in the Contract, the court must DENY Cook Mechanical's motion to stay the Plaintiffs' ERISA claims pending arbitration.

b. The Conversion Claim - Count VI of the Complaint

The conversion claim requires a different analysis regarding the motion to stay because, unlike the Plaintiffs who are Trustees, Local Union 10 is, in fact, a party to the Contract.[7] Local Union 10 asserts several arguments in opposition to the motion to stay. Initially, it is asserted that Cook Mechanical should not be permitted to demand arbitration because the existence of a contract between the parties is denied by Cook Mechanical in its Answer to the Complaint. (Pl.'s Mem., at 6). However, Cook Mechanical has simply pled in the alternative in its efforts to force the Plaintiff to thoroughly prove its claims pursuant to Fed. R. Civ. P. 8(e)(2) by making what

---

[7]Defendant Cook Mechanical does not address the distinction. (Def.'s Mem. at 4).

-10-

otherwise would constitute inconsistent statements and arguments of law. Such an approach is permitted under the Rules.

Based on what has been presented to the court, and for the limited purposes of resolving these motions, the court must nevertheless assume that a contract containing arbitration provisions does, in fact, exist between Cook Mechanical and Local Union 10. Indeed, it appears that Cook Mechanical signed the document and was provided with Local Union 10 employees under the terms and conditions of the Contract. Accordingly, where the Contract includes the grievance procedures of Article III, the court must determine whether the parties are bound to arbitrate the conversion claim pursuant to the terms of the collective bargaining agreement. AT&T v. Communications Workers of Am., 475 U.S. 643, 649 (1986).

Local Union 10 further asserts that "even assuming Cook Mechanical is bound to the collective bargaining agreement and the arbitration provision, this [conversion] dispute does not involve the interpretation of the bargaining agreement. [Local Union 10] has alleged a straightforward conversion claim." (Pl.'s Mem. at 6). In its argument, Local Union 10 attempts to avoid the applicable precedent of McCormick v. AT&T Tech., Inc., 934 F.2d 531 (4th Cir. 1991), in which the court held that it needed to interpret a collective bargaining agreement to resolve a conversion claim. McCormick involved an employee who initially filed his suit in state court alleging various tort claims, including that the employer defendant was liable for conversion due to its careless disposal of the contents of his work locker after the plaintiff employee was terminated. McCormick, 934 F.2d at 533. The employee was a member of a union and the parties were subject to a collective bargaining agreement. The employer removed the case to federal court, arguing that the court had jurisdiction pursuant to §301 of the Labor

Management Relations Act (LMRA), 29 U.S.C. § 185(a). The employer also moved for summary judgment. Id. The district court found in favor of the employer because even though the state law claims were preempted by federal law, they were also barred by a six-month statute of limitations governing such actions. Id. at 534. On appeal, the Fourth Circuit held that while state laws are preempted by §301, the preemption applies "only if such application requires the interpretation of a collective bargaining agreement." Id. (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988)). Thus, in the present case, the court must determine whether resolution of the subject state law conversion claim requires it to interpret the collective bargaining agreement between Cook Mechanical and Local Union 10. McCormick, 934 F.2d at 535.

The Commonwealth of Virginia defines conversion as "any *wrongful* exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession." Buckeye Nat'l Bank v. Huff & Cook, 114 Va. 1, 5 (1912)(emphasis added). The Fourth Circuit has recognized that:

> To prove the conduct wrongful, a plaintiff must thus demonstrate not that the conduct was wrongful in some abstract sense, but wrongful under the circumstances. The circumstances that must be considered in examining management's conduct are *not merely factual, but contractual*, and the collective bargaining agreement is a crucial component of these circumstances.

McCormick, 934 F.2d at 536 (emphasis added). The court held that in order to determine whether the employer acted wrongfully, reference to the contract was "essential" to find out what each party's rights and duties were in the relationship. Id., at 537. Despite Local Union 10's statements that the conversion claim here is "straightforward," and that the Contract is entirely

unambiguous, this court must still interpret the Contract to determine whether or not Cook Mechanical acted wrongfully by allegedly converting the funds. However, before the court can reach the issue (which it does not have to address in order to resolve the pending motions), it must be mindful of the arbitration provisions of the Contract binding the same parties involved in the conversion count.[8] Accordingly, where the Contract expressly contains an arbitration clause and there is a "strong presumption" in favor of arbitration, any doubts about the applicability of the grievance procedures have to be resolved in favor of arbitration. Moses, 460 U.S. at 24. As Cook Mechanical asserts, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (Def. Mem., ¶4, at 3, citing United Steelworkers, 363 U.S. at 582-583)). The court, therefore, must GRANT the motion to stay the conversion claim pending the outcome of arbitration, as dictated by the Contract, unless the Plaintiffs choose to abandon the claim in order to expedite the process.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated: 1/17/06

---

[8] In this regard, the court must adhere to Virginia's "plain meaning" rule, namely, "where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Pacific Ins. Co. v. American Nat. Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998)(quoting Lerner v. Gudelsky Co., 230 Va. 124, 131 (1985)).